**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HAN KIM, YONG SEOK KIM, YONG HWA CHUNG KIM, CHUNG KOOK KIM, and DANI BUTLER,

Plaintiffs,

v.

CIRCLE INTERNET GROUP, INC., and CIRCLE INTERNET FINANCIAL, LLC,

Defendants.

Case No. 1:26-cv-05445-MMG

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE RESTRAINING NOTICE WAS INEFFECTIVE AB INITIO ..... 2

II. CIRCLE NEVER HAD "POSSESSION OR CUSTODY" OF THE STOLEN USDC ..... 4

A. Even a Valid Restraining Notice Would Reach Only Property in Circle's Actual Possession ..... 5

B. Circle Lacks Actual Possession of the USDC ..... 7

C. North Korea Has No Interest in the USDC Reserves ..... 8

III. CIRCLE HAD NO COMMERCIALLY REASONABLE OPPORTUNITY TO RESTRAIN ANY USDC INVOLVED IN THE DRIFT HACK ..... 9

IV. PLAINTIFFS HAVE NOT ALLEGED DAMAGES ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ABKCO Indus., Inc. v. Apple Films, Inc.*,
39 N.Y.2d 670 (1976) ....................9

*All. Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*,
190 F.3d 16 (2d Cir. 1999)....................9, 10, 11

*Aspen Indus., Inc. v. Marine Midland Bank*,
52 N.Y.2d 575 (1981) ....................3, 10

*Bass v. Bass*,
140 A.D.2d 251 (1st Dep't 1988) ....................10

*Carr v. Hoy*,
2 N.Y.2d 185 (1957) ....................10

*Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*,
21 N.Y.3d 55 (2013) .................... *passim*

*Dussault v. Republic of Argentina*,
616 F. App'x 26 (2d Cir. 2015) ....................11

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
22 F.4th 83 (2d Cir. 2021) ....................5

*Hotel 71 Mezz Lender LLC v. Falor*,
14 N.Y.3d 303 (2010) ....................9

*In re Gravel*,
6 F.4th 503 (2d Cir. 2021) ....................3

*In re Sealed Case*,
932 F.3d 915 (D.C. Cir. 2019)....................6

*Kim v. DPRK*,
No. 1:25-mc-00527-MMG, ECF No. 123 (S.D.N.Y. Oct. 23, 2026) ....................2

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
739 F.3d 45 (2d Cir. 2013)....................6

*MacArthur I, Inc. v. Fields*,
188 A.D.3d 493 (1st Dep't 2020) ....................1, 6

*Matter of Supreme Mdse. Co. v. Chem. Bank*,
70 N.Y.2d 344 (1987) ....................9, 11

*Matter of Wimbledon Fin. Master Fund, Ltd. v. Bergstein*,
173 A.D.3d 401 (1st Dep't 2019) ....................3

*May v. Google LLC*,
2026 U.S. Dist. LEXIS 59785 (N.D. Cal. Mar. 20, 2026)....8

*N.Y. State Tax Comm'n v. Ritter*,
101 Misc. 2d 606 (Sup. Ct. Orange Cnty. 1979) ....10

*Pan Am. World Airways, Inc. v. Chem. Bank*,
78 A.D.2d 844 (1st Dep't 1980) ....3

*Rafkind v. Chase Manhattan Bank, N.A.*,
1992 WL 380291 (S.D.N.Y. Dec. 7, 1992) ....11

*Ray v. Jama Prods., Inc.*,
74 A.D.2d 845 (2d Dep't 1980)....6

*Retail Prop. Tr. v. Nassau Cnty. Dep't of Assessment*,
185 F.4th 316 (2d Cir. 2026) ....5

*Saratoga Cnty. Chamber of Com. v. Pataki*,
100 N.Y.2d 801 (2003) ....4

*SEC v. Amerindo Inv. Advisors Inc.*,
2014 WL 2112032 (S.D.N.Y. May 6, 2014) ....10

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)....5

*Stuhler v. State*,
127 Misc. 2d 390 (Sup. Ct. N.Y. Cnty.), *aff'd mem.*,
113 A.D.2d 1038 (1st Dep't 1985) ....10

*Tri-Glob. Mgmt. Corp. v. Richardson*,
25 A.D.3d 600 (2d Dep't 2006)....3

*Wagner v. Chiari & Ilecki, LLP*,
973 F.3d 154 (2d Cir. 2020)....4

**STATUTES**

CPLR 5201(b)....9, 11

CPLR 5222.... *passim*

CPLR 5225....5, 10, 11

McKinney's Cons. Laws of N.Y., Book 1, Statutes § 97 ....6

McKinney's Cons. Laws of N.Y., Book 1, Statutes § 98 ....6

N.Y. U.C.C. § 12-105(a)(1) ....7

**RULES**

31 C.F.R. § 510.201(a)(1)....9

31 C.F.R. § 510.201(b)(1) ........................................ 6, 8, 9

31 C.F.R. § 510.405(d)(1) ........................................ 6

Fed. R. Evid. 408 ........................................ 8

## INTRODUCTION

Plaintiffs' claim fails from the outset because they alleged no valid restraining notice. The notice was void *ab initio* because Circle lacked "possession or custody" of North Korean property at the time Plaintiffs served it. Mot. 11–14; CPLR 5222(b); *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*, 21 N.Y.3d 55, 57, 63 (2013) ("possession or custody" requires "actual possession").

Plaintiffs make no effort to demonstrate actual possession. Instead, they argue that *MacArthur I, Inc. v. Fields*, 188 A.D.3d 493 (1st Dep't 2020), repudiated the requirement in the context of restraining notices, as if the *MacArthur* court could alter the statutory text or overturn a high court's precedent. In reality, *MacArthur* ruled on its facts that a judgment debtor could not evade fiscal obligations by delegating authority over his assets to a non-party. The case has no application here.

Plaintiffs also argue that Circle's capabilities as the issuer of USDC constitute sufficient control that they need not allege actual possession. That argument contravenes *Northern Mariana* and is based on fabrications nowhere present in the Complaint—including that Circle "holds the private keys" and can do "anything it wants" with the USDC allegedly held by North Korea (Opp. 16), and "can cause every single USDC balance anywhere to move from one address to another." Opp. 21. Plaintiffs ultimately contend that Circle should be deemed to possess "every single USDC" ever issued. Opp. 20. Plaintiffs' fabrications and reliance on material outside the Complaint only serve to demonstrate the poverty of their position.

*First*, as noted, the notice never took effect. The Complaint does not allege that Circle possessed property in which it knew North Korea had an interest "at the time of service." CPLR 5222(b). Plaintiffs manipulate the language of CPLR 5222(b) to try to construct "a second, independent" basis to find the notice valid, but the effort is fruitless. Opp. 13. Even Plaintiffs'

construction would have required them to "state[] in the notice" the property in Circle's possession at the time in which North Korea had an interest. CPLR 5222(b). Because Circle had no such property, then or any time since, the notice was ineffective.

*Second*, even if the notice were effective, the Complaint does not allege that Circle ever possessed the USDC stolen in the Drift hack. By Plaintiffs' own account, North Korea "still possessed" and "still held" the stolen assets as it swapped, bridged, and ultimately dissipated them. Opp. 8–9; Compl. ¶¶ 110–16. Plaintiffs point to Circle's abilities to freeze USDC and "mint" new USDC, but neither constitutes actual possession of the assets. Plaintiffs' contention that Circle could *revise* its technology to permit it to "move a USDC balance from one address to another" concedes that Circle *lacked* that ability at the time of the Drift hack. Opp. 21.

Nor does North Korea have any interest in the USDC reserves. North Korea has no right to redeem USDC for U.S. dollars from Circle, and because U.S. sanctions law and Circle's own terms prohibit it, Circle cannot be required to do so. North Korea likewise cannot require Circle to mint USDC and therefore has no interest in "substitute" USDC. *See* Mot. 5; *Kim v. DPRK*, No. 1:25-mc-00527-MMG, ECF No. 123 at 15 (S.D.N.Y. Oct. 23, 2026).

*Finally*, Plaintiffs suffered no cognizable damage. Because, as Plaintiffs concede, turnover requires actual possession, Circle could not be ordered to deliver the USDC stolen in the Drift hack even if it had frozen it during the hack. The USDC would be in the hackers' possession, not Circle's. And again, U.S. sanctions law and Circle's terms would prohibit turnover.

## ARGUMENT

### I. THE RESTRAINING NOTICE WAS INEFFECTIVE *AB INITIO*

*The First Provision*. Circle was not required to speculate that Plaintiffs intended the notice's first provision to restrain North Korea's property, not Circle's. Opp. 14 n.6. A

restraining notice "serves as a type of injunction," *Aspen Indus., Inc. v. Marine Midland Bank*, 52 N.Y.2d 575, 579 (1981), and "to imply a restraint where none is stated would violate the principle that a party must have 'explicit notice' of what is forbidden or required." *In re Gravel*, 6 F.4th 503, 513 (2d Cir. 2021) (citation omitted); *see Tri-Glob. Mgmt. Corp. v. Richardson*, 25 A.D.3d 600, 601 (2d Dep't 2006).

Plaintiffs' cases are inapt. Neither involved a notice that, by its terms, purported to restrain the garnishee's own property. *See Pan Am. World Airways, Inc. v. Chem. Bank*, 78 A.D.2d 844, 844 (1st Dep't 1980) (ordering hearing to determine whether bank knew misnamed account was debtor's); *Matter of Wimbledon Fin. Master Fund, Ltd. v. Bergstein*, 173 A.D.3d 401, 401–02 (1st Dep't 2019) (holding firm in contempt for dissipating assets knowing they were subject to restraint).

*The Second Provision*. The entire restraining notice, including the second provision, never took effect because, at the time of service, Circle did not possess any North Korean property. Plaintiffs do not address, let alone distinguish, Circle's authorities. *See* Mot. 11; ECF No. 28 at 5–6 (citing *AG Worldwide*, *AXGINC*, Siegel, N.Y. Jur. 2d Enforcement and Execution of Judgments, and CPLR 5222's legislative history).

Instead, Plaintiffs manipulate CPLR 5222(b)'s language to argue that a restraining notice is effective if "it states that 'the judgment debtor . . . has an interest in specified property in the possession or custody of the person served,'" *whether or not* the restrained party was in possession of such property at the time of service. *See* Opp. 13. Plaintiffs cite no authority to support their interpretation abolishing the "at the time of service" requirement. There is none. In fact, a Second Circuit case Plaintiffs cite says the opposite:

> While restraining notices can be served on a person other than a judgment debtor, such a restraining notice "is effective only if, ***at the time of service***" (1) "he or she owes a debt to the judgment debtor," (2) the person "is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest," or (3) "***the judgment creditor or support collection unit has stated in the notice . . . that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served***."

*Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 157 (2d Cir. 2020) (emphasis added) (quoting CPLR 5222(b)); *see also* CPLR 5222 McKinney, Legislative Studies and Reports ("Under the second sentence of subd. (b) the restraining notice is effective against persons other than the judgment debtor only if they know or have reason to believe *at the time of service* that they are indebted to, or have property of, the judgment debtor." (emphasis added)); Mot. 11.

Even if Plaintiffs' interpretation were correct, the outcome would be the same. The notice does not identify North Korean property ever alleged to be "in the possession or custody of" Circle and was therefore never effective. *See also* Marathakis Decl. ¶¶ 11–13; ECF No. 28 at 8.[1]

Nor does laches apply. Opp. 16. There was no effective notice for Circle to challenge, and Plaintiffs identify no prejudice from any purported delay. *See Saratoga Cnty. Chamber of Com. v. Pataki*, 100 N.Y.2d 801, 816 (2003) (stating requirement). Plaintiffs contend they could have remedied defects they were made aware of, but the fatal defect here was not remediable—no redrafting would have put into Circle's possession USDC in wallet addresses held by a third party.

## II. CIRCLE NEVER HAD "POSSESSION OR CUSTODY" OF THE STOLEN USDC

Even if the notice were effective, Plaintiffs' claim must be dismissed because Circle is not alleged to have possessed the USDC stolen in the Drift hack. Mot. 12–18.

---

[1] Circle cites the Marathakis declaration because Plaintiffs do so in opposition to the Motion to Dismiss. Opp. 13, 14 n.6.

### A. Even a Valid Restraining Notice Would Reach Only Property in Circle's Actual Possession

Plaintiffs argue that the New York Court of Appeals' decision in *Northern Mariana*, interpreting "possession or custody" to require "actual possession," is limited to turnover under CPLR 5225(b) and does not apply to restraining notices under CPLR 5222(b). They are mistaken. Although the court performed its statutory analysis of "possession or custody" in the context of a question about turnover, its decision was not confined to turnover. *See, e.g.*, 21 N.Y.3d at 63 ("[T]his Court is required to construe the entire CPLR in a manner that harmonizes these variations [of 'possession or custody' with 'possession, custody or control']."); *id.* at 62 ("When the legislature has sought to encompass the concept of 'control' it has done so explicitly, evincing a legislative intent to exclude consideration of 'control' from those sections from which it is omitted.").

Because the court's analysis across the CPLR was required to construe "possession or custody," it is binding authority. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *Retail Prop. Tr. v. Nassau Cnty. Dep't of Assessment*, 185 F.4th 316, 326 (2d Cir. 2026) (same).

Plaintiffs' claim that "possession or custody" in CPLR 5222(b) is more broadly construed than in CPLR 5225(b) flouts *Northern Mariana* and general principles of statutory construction. Opp. 17–19; *see Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 96 (2d Cir. 2021) (federal courts "bound to apply" "New York law as determined by the New York Court of Appeals"); *N. Mariana*, 21 N.Y.3d at 63 (citing McKinney's Cons. Laws of N.Y., Book 1, Statutes §§ 97, 98).

Plaintiffs contend that in *MacArthur*, the Appellate Division "rejected extending *Northern Mariana's* 'actual possession' rule to restraining notices." Opp. 19. Yet *MacArthur* does not suggest any departure from *Northern Mariana*. Nor could it. In *MacArthur*, a payment administrator that the judgment debtor authorized to access his account and "make deposits, withdrawals and transfers as directed" disbursed nearly $470,000 at the debtor's direction after receiving the notice. 188 A.D.3d at 494–95. The court declined to interpret "possession or custody" to exclude the administrator's relationship to the debtor's accounts, since the debtor authorized the administrator to transact for his benefit. *Id.* at 495.[2]

*MacArthur* is inapposite. Plaintiffs do not allege Circle has any relationship with North Korea. Indeed, federal sanctions law prohibits U.S. persons from providing "financial . . . or other services" to North Korea. 31 C.F.R. § 510.405(d)(1); *see id.* § 510.201(b)(1); Exec. Order No. 13722 § 3(a)(i), 81 Fed. Reg. 14943 (Mar. 18, 2016); *In re Sealed Case*, 932 F.3d 915, 919 (D.C. Cir. 2019). North Korea cannot hold a Circle Mint account, Compl. ¶ 58, and did not give Circle access to or authority over anything. Nor did Circle transfer anything; the hackers did. *Id.* ¶¶ 110–16.

Even if *MacArthur* were relevant, to the extent it interprets "possession or custody" to mean anything other than "actual possession," it must be rejected. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (declining to follow "mistaken" intermediate appellate court ruling where the New York Court of Appeals had already ruled).

---

[2] *Ray v. Jama Prods., Inc.*, 74 A.D.2d 845, 845–46 (2d Dep't 1980), is inapposite for the same reasons. The garnishee in *Ray* had a relationship with the judgment debtor and, in violation of a restraining notice, paid a third party for the judgment debtor's benefit. *Id.* at 845.

**B. Circle Lacks Actual Possession of the USDC**

The Complaint does not allege that Circle ever actually possessed the USDC stolen in the Drift hack. Mot. 15–18. Plaintiffs instead argue the *non sequitur* that Circle supposedly possesses "every USDC coin that it issues" because it can freeze wallet addresses and mint new USDC. Opp. 20–21. Neither ability gives Circle possession of the USDC stolen by the hackers, and *Northern Mariana* rejected the "control" test Plaintiffs advocate. 21 N.Y.3d at 60.

Plaintiffs' fallback, that Circle could in the future rewrite its smart contracts to "move a USDC balance from one address to another," (Opp. 21), fares no better. The Complaint does not allege that Circle had rewritten anything when the Drift hack occurred. And as Circle explained in its opening brief, and Plaintiffs do not contest, Circle does not have custody of assets in transit over CCTP. Mot. 16–18.

Nor does UCC Article 12, which governs controllable electronic records ("CERs"), help Plaintiffs. Control of a CER requires that a person have, among other things, (1) the "power to avail itself of substantially all the benefit" of the record, and (2) "exclusive power . . . to . . . transfer control of the electronic record to another person or cause another person to obtain control of another controllable electronic record as a result of the transfer of the electronic record." N.Y. U.C.C. § 12-105(a)(1). The hackers alone had those powers. Compl. ¶¶ 65, 110–16. Circle never controlled, much less possessed, the stolen USDC.[3]

USDC is also not akin to gift-card balances, as Plaintiffs contend. Holders cannot redeem USDC from Circle without being eligible for, and having, a Circle Mint account. North

[3] Plaintiffs' contention that "control" of a CER establishes possession is unsupported by Prefatory Note 1 to UCC Article 12 that they cite. Opp. 22. The note calls control "the functional analogue of possession" in the "context of" "perfection of a security interest." It does not say that control is possession, much less in the context of a restraining notice. *See N. Mariana*, 21 N.Y.3d at 62 (rejecting argument that "custody" is "the functional equivalent of 'control'").

Korea is ineligible. USDC Terms § 2; Compl. ¶ 58; 31 C.F.R. § 510.201(b)(1). And *May v. Google LLC*, 2026 U.S. Dist. LEXIS 59785, at *53–54 & n.2 (N.D. Cal. Mar. 20, 2026), is inapposite. It applied California conversion law, not the CPLR, and it credited without deciding the "allegation" that Google possessed the relevant funds. *Id.* at *53 & n.2.

Plaintiffs also claim a letter from the New York Attorney General and a complaint filed by a district attorney in Wisconsin support Plaintiffs' arguments, but they undermine them. *See* Letter from Letitia James, et al., to Charles E. Schumer, et al., at 5 (Jan. 26, 2026) ("AG Letter") (Circle "disclaim[s] any ability to burn and reissue frozen funds"); Opp. Ex. B ¶ 9 (Circle "did not hold the 'private keys' that it contended were necessary to transfer" the USDC). Circle's voluntary agreement to issue substitute USDC in the forfeiture case, conditioned on "a final order or judgment of forfeiture and a permanent blocklisting order," (Opp. 24), is not an "agreement . . . to comply with freezing and turnover orders." Opp. 29. It says nothing about the requirements of CPLR article 52. If anything, Circle's agreement to issue *substitute* USDC after the government obtained a final order of forfeiture confirms that Circle did not possess the USDC. In any event, the agreement has no relevance here because it has no bearing on whether Plaintiffs state a claim under the CPLR. *See* Fed. R. Evid. 408 (evidence of compromise inadmissible to prove "validity or amount of a disputed claim").

### C. North Korea Has No Interest in the USDC Reserves

Plaintiffs' alternative theory, that North Korea has an assignable interest in equivalent U.S. dollar reserves held by Circle to back USDC, (Opp. 24–25), fails because North Korea has no interest in them. CPLR 5222(b).

Federal law prohibits Circle from providing "funds, goods, or services" to or for the benefit of North Korea, and the USDC Terms likewise bar North Korea from holding or

redeeming USDC. 31 C.F.R. §§ 510.201(a)(1), (b)(1); USDC Terms §§ 2–3, 30.[4] Because North Korea has no right in the reserves that "could be assigned or transferred," CPLR 5201(b), they are not subject to restraint. *See* CPLR 5222(b); *Matter of Supreme Mdse. Co. v. Chem. Bank*, 70 N.Y.2d 344, 350 (1987) ("In the absence of compliance with the terms and conditions of a letter of credit, the issuing bank owes nothing to the beneficiary."); *All. Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.*, 190 F.3d 16, 25 (2d Cir. 1999).

Plaintiffs' reliance on *ABKCO* and *Hotel 71* is misplaced. Opp. 25–26. Those cases involved interests the debtors held and could assign. *ABKCO Indus., Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 674 (1976); *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 314 (2010). North Korea holds no interest in the reserves backing USDC.

## III. CIRCLE HAD NO COMMERCIALLY REASONABLE OPPORTUNITY TO RESTRAIN ANY USDC INVOLVED IN THE DRIFT HACK

Even if Circle were subject to the notice, Plaintiffs concede that Circle could be liable only if it had a commercially reasonable opportunity to restrain the stolen USDC. Mot. 18–19. The Complaint alleges no such opportunity.

Pointing to the November 1 date of the notice and North Korea's history of hacks, Plaintiffs argue that Circle had "months to prepare." Opp. 26. But these allegations do not show that Circle should have known who was conducting the Drift hack, let alone which wallet addresses held the hacked funds. The Complaint alleges Circle "lacks access to information necessary" to determine whether "a wallet address is linked to or associated with [North Korea]," confirming Circle could not have known about North Korea's alleged involvement before any

[4] Circle's statement to the SEC that outstanding USDC "continue to represent an obligation for the Company to redeem" them, (Opp. 25), is not to the contrary. The same letter explains that "not all holders are able to redeem Circle stablecoins directly from Circle." Letter from Circle Internet Financial Ltd. to SEC, at 38 (Apr. 12, 2024).

public attribution on April 2, which was still preliminary and uncertain. Compl. ¶¶ 64, 149; Opp. 10–11, 27.

## IV. PLAINTIFFS HAVE NOT ALLEGED DAMAGES

Plaintiffs have also failed to allege facts showing "that property of the judgment debtor was available to satisfy the judgment at the time the restraining notice was in effect." *Aspen*, 52 N.Y.2d at 581.

Plaintiffs concede that a turnover garnishee must have "actual possession or custody of the judgment debtor's property." Opp. 17. But even if Circle had frozen USDC subject to the Drift hack, it would be in the ***hacker's possession***, not Circle's. *See N. Mariana*, 21 N.Y.3d at 63; *All. Bond*, 190 F.3d at 25 (creditor must "proceed against the person having the ability to produce the asset").

Plaintiffs' damages claim is foreclosed for additional reasons. Because Plaintiffs "stand in the shoes of the judgment debtor," *Bass v. Bass*, 140 A.D.2d 251, 253 (1st Dep't 1988), they can obtain nothing more than North Korea could. A judgment creditor cannot "reach assets in which the judgment debtor has no interest." *Id.*; *see Carr v. Hoy*, 2 N.Y.2d 185, 187 (1957). Funds that are "the fruits of criminal activity" "are not property in which [the judgment debtor] has an interest" and are not subject to turnover. *Stuhler v. State*, 127 Misc. 2d 390, 392 (Sup. Ct. N.Y. Cnty.), *aff'd mem.*, 113 A.D.2d 1038 (1st Dep't 1985) (dismissing CPLR 5225(b) petition against proceeds of "fraudulently induced sales"); *N.Y. State Tax Comm'n v. Ritter*, 101 Misc. 2d 606, 607 (Sup. Ct. Orange Cnty. 1979) (judgment debtor "has no interest in or right to the money which appears to be 'fruits of a crime', therefore, there is no basis for relief under CPLR 5225 (subd [b])"); *SEC v. Amerindo Inv. Advisors Inc.*, 2014 WL 2112032, at *16 (S.D.N.Y. May 6, 2014).

In addition, a money judgment may be enforced only against property where the judgment debtor is "entitled to possession" and which it could assign or transfer. CPLR 5201(b), 5225(b); *All. Bond*, 190 F.3d at 25. Even if Circle had frozen the USDC, North Korea would not satisfy either requirement. *See Rafkind v. Chase Manhattan Bank, N.A.*, 1992 WL 380291, at *2 (S.D.N.Y. Dec. 7, 1992) (denying judgment creditor's petition to reach accounts frozen by court order); *Dussault v. Republic of Argentina*, 616 F. App'x 26, 28 (2d Cir. 2015) (a debtor "barred from getting the funds back" is "not 'entitled to the possession' of the funds").

Plaintiffs' efforts to collect what they refer to as "the value represented by that [USDC]"—the U.S. dollar reserves or replacement USDC—are also unavailing. Opp. 28. Federal law and the USDC Terms prohibit Circle from minting USDC or redeeming it for North Korea. *See supra* at 6, 8–9; USDC Terms §§ 3, 30; Compl. ¶ 58. And if the USDC were frozen, North Korea could also not present it to Circle for redemption. *See Supreme Mdse.*, 70 N.Y.2d at 350 ("In the absence of compliance with the terms and conditions of a letter of credit, the issuing bank owes nothing to the beneficiary.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: October 30, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *John P. Flynn*
John P. Flynn
Colleen Bal (admitted *pro hac vice*)
Joshua A. Baskin (admitted *pro hac vice*)
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: jflynn@wsgr.com
Email: cbal@wsgr.com
Email: jbaskin@wsgr.com

*Counsel for Defendants Circle Internet Financial, LLC, Circle Internet Group, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, the undersigned certifies that this brief contains 3,484 words and complies with the Court's formatting rules.

Dated: October 30, 2026

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *John P. Flynn*
John P. Flynn
Colleen Bal (admitted *pro hac vice*)
Joshua A. Baskin (admitted *pro hac vice*)
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: jflynn@wsgr.com
Email: cbal@wsgr.com
Email: jbaskin@wsgr.com

*Counsel for Defendants Circle Internet Financial, LLC, Circle Internet Group, Inc.*